## The Heirs of Arthur Fox and John Craig *v.* Edward Holeman.

*In Chancery.*

This was an appeal from a decree of the district court held in Frankfort.

The suit was originally brought by the appellee in the supreme court for the district of Kentucky, against Arthur Fox and John Craig, and on the death of Arthur Fox revived against his heirs. The suit was removed first to the court of appeals, and then to the district court held in Frankfort, for trial.

Edward Holeman on the 17th day of November in the year 1779, obtained from the commissioners the following certificate for a settlement and pre-emption, to-wit:

"Edward Holeman this day claimed a settlement and pre-emption to a tract of land lying on the head spring of Buck run, the next branch below Greer's creek, by improving the same in the year 1775, and raising corn in the country in the year 1776. Satisfactory proof being made to the court, they are of opinion that the said Holeman has a right to the said 400 acres of land, including the said improvement, and the pre-emption of 1,000 acres adjoining, and that a certificate issue accordingly."

And on the 7th day of December, in the year 1779, entered his certificate for settlement with the county surveyor, in the following words, to-wit:

"Edward Holeman enters 400 acres of land in Kentucky county, by virtue of a certificate, lying on the head springs of Buck run, the next branch below Greer's creek."

And having obtained a pre-emption warrant, entered the same with the said surveyor on the 7th day of June, in the year 1780, in the following words, to-wit:

"Edward Holeman enters 1,000 acres upon a pre-emption warrant, on the north-east corner of his settlement, running down the side, and along the end line for quantity."

The appellee, who was complainant in the inferior court, alleged that, when he first went out to survey his said settlement and pre-emption, the defendant, John Craig, who was with him, advised him to survey the same as designated on the connected plat by the lines G to H, and H to 8, and told him that if he ran them out as he wished to do, they would interfere with the pre-emption of one Powers.

That when the surveyor made the surveys as directed by the said Craig, he declared that he would not abide by them, but that on the 10th day of the same month (which was May), and in the same year, 1784, the defendant, Arthur Fox, on the information and in partnership with the other defendant, John Craig, made the following entry of 1,480 acres on treasury warrant, to-wit:

"Arthur Fox enters 1,480 acres of land on part of a treasury warrant, No. 16,651, on the waters of Row's run and Glenn's creek, beginning at a honey-locust and buckeye, corner to John Craig and Robert Johnston; thence south 30 west, 290 poles, to Humphrey Marshall's line; thence with said line south 10 east, 100 poles, to two white ashes and iron-wood in Edward Holeman's settlement and pre-emption line, and with the same north 65 east, 400 poles, to his corner, a buckeye and two white oaks; thence at angles with the same south 25 east, 110 poles, to a pea tree and white ash in Holeman's line, leaving the same north 65 east, 280 poles, to two sugar trees and buckeye; thence north to John Briscoe's pre-emption corner, and with the same, the same course, to Cyrus McCracken's line; thence with the said line north 70 west, to Bartlet Searcy's corner; thence with Searcy's line south 20 west, 473 poles, to a hoopwood, buckeye and elm, corner to said Searcy; thence at right angles with the same north 70 west, 86 poles, to a sugar tree and white ash in the line of the said before mentioned Craig and Johnston, and with the same south 70 west, 245 poles, to the beginning."

And on the next day, to-wit, May 11, 1784, caused the same to be surveyed in the manner described on the connected plat.

That he afterward caused his settlement and pre-emption to be resurveyed in the manner described on the connected plat, but that before he could obtain grants the defendants had obtained theirs, and refused to convey to him the interference occasioned by their fraudulent conduct.

The annexed connected plat, No. 40, was returned in this cause, of which the following is an explanation:

1 2 3 4, Edward Holeman's settlement as surveyed. 4 5 6 7, pre-emption do. do. A, Edward Holeman's spring and improvement. The dotted lines represent the same spring and improvement as directed to be laid down by the interlocutory decree of the district court. B C D E F G H, the interference with Arthur Fox's survey of 412 acres. 8 9 10 11 12 13 14 15, G H, Arthur Fox's 1,480 acres as surveyed. G to H, and H to 8, are lines of Edward Holeman's survey of settlement and pre-emption as first made. The water course is Stone lick creek, as now called, and is the first creek emptying into the Kentucky below the mouth of Greer's creek.

It was proved at the trial of this cause, by the deposition of William Crooks, that Edward Holeman, the complainant in the inferior court, had built a cabin about three poles high at the place designated in the connected plat by the letter A, in the month of May in the year 1775 ; and, by Richard Rue, that he was with him at the same place in the year 1776, and that they cut logs for a cabin, and that some time afterward, in the same year, he assisted him to cover a cabin which had been raised when he first got there, and which had been built by said Holeman the year before.

Richard Rue also deposed, that in the year 1776 he assisted the said Holeman to plant a peach nursery at the said place, and in

1784 saw a peach tree standing, which he supposed to be one of the trees.

David Darst deposed, that he was present at the time of making the first survey, in April, 1784. That he met Cave Johnston, the deputy surveyor, and his party at Holeman's improvement. That the said surveyor went a certain distance from the spring and made a beginning, and the said Holeman directed the course. That the said Johnston set his compass agreeably to the said Holeman's directions, but that Captain John Craig, who was present, directed the surveyor to alter his course, to which Holeman objected, but that the surveyor ran the course as directed by Craig. That Holeman turned his back, and told the surveyor if he would not run agreeably to his directions, to run agreeably to the entry, which the surveyor then had in his hand, but that the surveyor did neither, but ran as John Craig had directed him, and after it was finished the said Holeman was very much dissatisfied, and said he would not stand to the survey.

Edward Holeman deposed, that some time in the month of April, in the year 1784, he was employed by Edward Holeman to carry the chain round his settlement and pre-emption in the county of Fayette, on the head of Stone lick, and this deponent met Cave Johnston, deputy surveyor, and his party at said Holeman's improvement. That the surveyor went a certain distance from the spring and made a beginning, and that said Holeman directed the course, and said Johnston set the compass agreeably to said Holeman's instructions. That Captain John Craig, being present, prevailed on said Johnston to alter the course, and said Holeman objected to said Craig's alteration, and said Holeman turned his back and told said Johnston (the surveyor), if he would not run the land agreeably to his directions, to run it agreeably to the location, which location the said surveyor had in his hand.

That the surveyor would not run agreeably to said Holeman's direction, nor the locations, but set out and ran agreeably to said Craig's direction, and after the surveyor had gone round the survey, the said Holeman was very much dissatisfied with the survey, and said that that was not his intended land, and that he would not let the survey stand, for it was not agreeably to the location, nor his directions.

Joel Collins deposed, that Captain John Craig told him he was present when Holeman was about to make the first survey on his settlement and pre-emption, and could have directed how it should

be made, but that he would not do it, on account of Holeman's being a man of such a humor. That the said Craig asked him what Holeman complained of, and he told him that Holeman complained that after he had directed his settlement to be surveyed in a square form, with lines to the cardinal points, and his improvement in the center of it, and his pre-emption, 500 acres on the east side of his settlement, and 500 acres on the north end, Craig, or Johnston, or one of them, told him it could not be run so, agreeably to location, which the said Craig then acknowledged was the purport of the conversation, but asked, "What of all that? When the plat is laid before the judges it will appear Holeman has surveyed wrong, and they will strike it off to me."

William Steele deposed, that some time in 1785, or 1786, Arthur Fox told him he held the entry of 1,480 acres, which is made in his own name, in partnership with John Craig and John Hawkins Craig.

Joseph Collins deposed, that some time in the latter end of the year 1784, or the beginning of the year 1785, Arthur Fox informed him that he had made an entry adjoining the lines of Holeman's survey, which he knew to be surveyed contrary to location.

Richard Young deposed, that some time in the month of September, in the year 1784, he was requested by Cave Johnston, who was a deputy surveyor in Fayette county, to go and meet Edward Holeman on his settlement and pre-emption, which he did. That he understood Holeman was dissatisfied with the surveys as before made, because they ran into McClean's pre-emption, and that Cave Johnston had promised him to re-survey them. That by Holeman's request he made the line of McClean's pre-emption a boundary of the survey. That he has heard Fox say, in his lifetime, John Craig and John Hawkins Craig were concerned with him in the entry of 1,480 acres.

John Hawkins Craig deposed, that some time in the winter or spring of the year 1784, John Craig, Arthur Fox and himself made the entry of 1,480 acres of land in partnership.

This cause was argued in the Franklin district court in the year 1799, and the following decree pronounced:

BY THE COURT.—The defendants must convey to the complainant, by deed with special warranty, their right to that part of the land comprehended within a survey represented on the surveyor's report by the figures 1 2 3 4 5 6 7, including the spring and improvement of Edward Holeman in the center of a square, with lines to

the cardinal points, and the pre-emption lying on the north and east sides of the settlement, which shall be within their survey. The court are induced to this opinion, from the superior dignity of the claim of the complainant, together with his priority of location. In addition to these reasons, they consider the conduct of the defendant, Craig, toward the complainant as marked with such fraudulent intention as to destroy any equity which he sets up, and sufficient to divest him and his partner of any legal title they may have acquired to the land in controversy.

In order to ascertain the true position which the complainant ought to occupy, the court conceive themselves bound to combine the calls in his different entries with the commissioners and surveyor; and as they can be reconciled, and no intermediate entry is made, the court have given him that position which embraces his most material and best established calls.

Order of survey, etc.; which decree was made final at the —— term, in the said year, and an appeal taken by the defendants.

And now, at this term, the said appeal was argued.

TALBOT for appellants.—Two questions arise in this cause :

*First.* Are the entries of the appellee with the commissioners and surveyor sufficiently special ? and

*Second.* Is there any proof of such fraud, on the part of the appellants, that they shall be precluded from availing themselves of the advantage of their legal title?

On the first point, the court must decide in favor of the appellants, because the calls of the appellee's entries are for the head springs of Buck run, and the surveys are made on Stone lick creek.

The call for the improvement can not help the entries, for there is no proof of its notoriety. It was customary, in those days, to make many improvements, and the appellee may have one at the head of Buck run.

The appellants must also succeed on the other point, for there is no actual proof of fraud on their part.

It was the duty of the surveyor to make the surveys according to location, or as the party directed him, and it is absurd to suppose an officer acting upon oath would attend to the directions of a man who had no right to give any, contrary to the declared wish and in the presence of the party himself.

HUGHES for appellees.—The decree of the district court is well founded.

It would be contrary to every principle of equity and justice to permit the appellants to avail themselves of a title acquired by fraud.

That the title was acquired by fraud, there can be no doubt, for these things are proved: That John Craig directed the surveyor to survey the appellee's settlement and pre-emption contrary to location, on the ―― day of ―――, 1784, under the pretense that if run otherwise it would interfere with the pre-emption of Powers, and that the surveyor followed such directions, contrary to the declared wishes of the appellee.

That on the 10th day of May, 1784, Arthur Fox, with whom the said John Craig and John H. Craig were in partnership, entered the land which would have been covered by the appellee's claim, if properly surveyed, and surveyed it the next day, and that the surveyor returned the first survey made for the appellee contrary to his directions.

The only question is, to what land is the appellee, who was complainant in the district court, entitled:

The entries of the settlement with the commissioners and surveyor, taken together, which is the rule in construing such claims (see the case of *Consilla* v. *Briscoe*, *ante*, p. 84), read thus: "On the head spring of Buck run, the next branch below Greer's creek, to include his improvement."

The water-course, called in the entry Buck run, is now called Stone lick creek, but all uncertainty in the description is removed by the call for the improvement, and the declaration that the water course called for is the next branch below Greer's creek, which was well known by that name when these entries were made.

The appellee must be bound by the surveys made by Young, which are made improperly, and can only hold what is within those surveys, and within the settlement and pre-emption as laid down by direction of the district court, which are laid down according to the rules established by former decisions.

BY THE COURT.—The decree pronounced by the court below was made on just principles, and the same must be affirmed, with costs. But, inasmuch as the appeal from the decree has suspended the conveyance, and the acting of the commissioners appointed by the court to ascertain the rents and profits, etc., the cause is remanded to the court from whence it came, that the said court may make such orders therein as may be necessary to a final determination of the cause, which is ordered to be certified to the said court. Costs, etc.